```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


RYAN MATIS                            *    CIVIL ACTION

VERSUS                                *    NO. 04-1330

KATHRYN RAE TOWING, INC. et al.       *    SECTION "B"(3)
```

### ORDER AND REASONS

Before the Court are three motions for summary judgment. Defendants State Farm Mutual Automobile Insurance Company ("State Farm") (Rec. Doc. No. 26) and Progressive Insurance Company ("Progressive") (Rec. Doc. No. 28) separately move for summary judgment on Plaintiff's claim for benefits under the liability insurance policy issued to defendant Kathryn Rae Towing, Inc. ("KRT"). Plaintiff Ryan Matis moves for summary judgment on the issue of Jones Act Seaman status. (Rec. Doc. No. 27). For the following reasons, **IT IS ORDERED** that all of the above motions are **DENIED**.

### BACKGROUND

This suit arises from a two-car collision. (Rec. Doc. No. 21 at 1). Plaintiff, Ryan Matis, was a passenger in one of the vehicles, which was driven by his Jones Act employer's captain,

Eric Marks[1]. Id. Plaintiff's Jones Act employer is defendant, Kathryn Rae Towing, Inc. ("KRT"), whose corporate vehicle in which Plaintiff was a passenger at the time of the accident, is insured by Defendant, State Farm. (Rec. Doc. No. 11 at 1). Defendant, Joseph Wascom, an insured of Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), was the driver of the second vehicle involved in the collision. (Rec. Doc. No. 21 at 1).

Plaintiff filed suit on May 7, 2004. (Rec. Doc. No. 1). The original complaint was subsequently amended on November 1, 2004, to specifically allege the negligence of Joseph Wascom. (Rec. Doc. No. 23).

## DISCUSSION

### A. Standard of Review for Summary Judgement

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Although the Court must consider the evidence with all

---

[1] Another named Defendant.

reasonable inferences in the light most favorable to the non-moving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. Webb v. Cardiothoracic Surgery Associates of North Texas, 139 F.3d 532, 536 (5th Cir. 1998). The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. Id. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. Travelers Ins. Co. v. Liljeberg Enter., Inc., 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Issues before the Court**

The Jones Act provides a cause of action in negligence for "any seaman" injured "in the course of his employment." 46 U.S.C. App. § 688(a). Under current law, seamen are entitled to some recovery from their employer, the vessel's owner, member of the crew, or master of the vessel. Chandris, Inc. v. Latsis, 515 U.S. 347, 354-55 (1995). See Daughdrill v. Diamond M. Drilling Co., 447 F.2d 781, 783 (5th Cir. 1971). The motions for summary judgement turn on two critical issues: (1) whether Plaintiff or Marks, as driver of the vehicle in which Plaintiff was a passenger, are "seaman" under the Jones Act, and (2) whether the two individuals were in the course of their employment at the time of the accident.

**C. Seaman Status of Erick Marks and Plaintiff**

Defendant Progressive and the Plaintiff urge this Court to find Defendant Erick Marks and Plaintiff Ryan Matis seamen under

3

the Jones Act. (Rec. Doc. Nos. 28 & 27). Although the Jones Act does not define the term "seaman," case law has establishes that the term does not include land-based workers, 498 U.S. at 348, and that seaman status depends "not on the place where the injury is inflicted . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship . . . to the vessel and its operation in navigable waters." <u>Chandris</u>, 515 U.S. at 359-60 (internal citations and quotations omitted). "Thus, maritime workers who obtain seaman status do not lose that protection automatically when on shore and may recover under the JA whenever they are injured in the service of a vessel, regardless of whether the injury occurs on or off the ship." <u>Id.</u>

To qualify as a seaman under the Jones Act, a maritime worker must demonstrate an "employment-related connection to a vessel in navigation." <u>McDermot Int'l, Inc. v. Wilander</u>, 498 U.S. 337, 355 (1991). A plaintiff alleging seaman status must satisfy a two-part test. First, the employee's duties contribute to the function of the vessel or to the accomplishment of its mission. This requirement "is a broad threshold requirement that makes all maritime employees who do the ship's work eligible for seaman status." <u>Chandris</u>, 515 U.S. at 369.

Second, a seaman must have a connection to a vessel in navigation that is substantial both in terms of duration and nature. <u>Chandris</u>, 515 at 368. The second prong is meant "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only

a transitory or sporadic connection to a vessel in navigation." Id. The court must examine the plaintiff's overall "employment-related connection . . . to a vessel in navigation," not simply the immediate circumstances or location of the plaintiff's injury. Id. at 363. In the Fifth Circuit, generally, an employee "who spends less than 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman." Id. Thus, the Court must examine the quality and the quantity of activity.

As the Plaintiff points out in his motion, the question of who is a seaman is a mixed question of law and fact. (Rec. Doc. No. 27 at 8). It often will be inappropriate to take the question from the jury. "[I]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a member of a crew [and thus a seaman] it is a question for the jury." Chandris, 515 U.S. at 369. "Nevertheless, summary judgment . . . is mandated where the facts and the law will reasonably support only one conclusion." Duplessis v. Daybrook Fisheries, Inc., 2004 WL 414824 (E.D. La 2004)(internal quotations omitted); Wilander, 498 U.S. at 356.

Defendant KRT concedes that "plaintiff and captain Marks might generally be considered Jones Act seaman when they were working aboard the TAK-1[.]" (Rec. Doc. No. 31 at 5).[2] Defendant

---

[2]In the factual background section of KRT's brief, they state, without legal support that "the crewmembers were land based employees who went to work everyday, they just happened to work on a tugboat instead of an office other land location." (Rec. Doc. No. 31 at 4). However, in the law and argument portion of the brief, defendant does not make this assertion.

5

Progressive also argues that Plaintiff and Marks should be considered a seamen for the reasons below. (Rec. Doc. No. 28).

The Court finds Marks, the driver, and Plaintiff Matis would be considered Jones Act seaman if they eventually prove their conduct was within the course and scope of their employment. Plaintiff was a deckhand for KRT at the time of the accident and regularly worked on the TAK-I. (Rec. Doc. No. 28 at 5, Ex. "2" at 28). Marks was the captain on the vessel and had been working for Defendant KRT for approximately four years. Both worked 14 days on and 7 days off on the TAK-I, a fleet boat. (Rec. Doc. 28 at 10 citing Deposition Transcript of Erick Marks, Ex. "3" at 12). Plaintiff and driver-Matis were paid a day rate based on the 12 hours of service they provided while onboard the vessel each day. (Rec. Doc. No. 31 at 3).

As deckhand and captain, they "contribute to the function of the vessel or to the accomplishment of its mission." Compare Magnolia Towing Co. v. Pace Jr., 378 F.2d 12 (5th Cir. 1967) (finding seaman status where employer sent employee to pick up plaintiff and accident in car owned by defendant/employee occurred on the way to vessel), with Barret v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir. 1986) (denying seaman status where welder's helper worked offshore, 14 days on, 7 days off).

Additionally, they both had a substantial connection to the TAK-1. See Barrett v. Chevron, 781  F.2d 1067 (5th Cir. 1986) ("When the evidence can lead only to the conclusion that the injured person was a crew member, summary judgment declaring his

status is proper.").

**D. Course of Employment**

For Plaintiff to recover under the Jones Act, the Court must not only find he was a seaman, but also that he was injured "in the course of his employment." 46 U.S.C. App. § 688(a). This is a fact intensive inquiry. The sole case Plaintiff cites in support of his position that he was "in the course of employment" at the time of the accident is readily distinguishable. In Vincent v. Harvey Well Service, 441 F.2d 146 (5th Cir. 1971), the plaintiff was determined to be a seaman while riding as a passenger in a vehicle furnished by the employer, driven by a fellow employee. Unlike the circumstances here, the driver of the vehicle in Vincent was paid for the additional time to pick up and drop off the plaintiff and the driver met his fellow employees at a designated location for the transportation to work. Vincent, 441 F.2d at 147-48.

Similar to the case at bar, the Fifth Circuit has affirmed a denial of seaman status where the plaintiff was on his way to work; had definite equal periods on and off the vessel; maintained a shore life; was not on shore leave; paid plaintiff for travel time from boat to vessel, but not for land travel. Sellers v. Dixilyn Corp., 433 F.2d 446 (5th Cir. 1970). Importantly, however, the employer here, Defendant KRT, provided land transportation in a vehicle owned by the employer-company.

In Daughdrill v. Diamond M. Drilling Co., 447 F.2d 781 (5th Cir. 1971), the Fifth Circuit reversed a district court's

7

decision granting seaman status where the plaintiff's employer did not furnish land transportation, pay for land travel, or reimbursement for land travel expenses, but did pay employees for travel time on boat to vessel; employees shared the expenses of land travel; and the employees were under no obligation to return to work on their off time. Defendant KRT proffers that because driver-Marks shares the expenses and costs of the vehicle maintenance and gas, the present case is similar to <u>Daughdrill</u> where employees shared the expenses of land travel. Here, unlike the facts in <u>Daughdrill</u>, KRT is providing land travel even if employees are not paid for time during travel. See also <u>Foret v. Co-Mar Offshore Corporation</u>, 508 F.Supp. 980 (E.D.La. 1981) (denying seaman status where plaintiff was returning to work and employer did not provide transportation).

The Plaintiff offers three factors to support the position that Ryan Matis was a seamen in the course of employment at the time of the accident, on his way to work, in a vehicle owned by KRT, driven by a co-worker. (1) Riding to and from the boat with the shift captain was for the benefit of KRT, their employer; it assured attendance. (2) On occasion, Matis and/or Marks performed some work related task on the way to the ship. (3) KRT provided the vehicle in which the accident occurred to transport its employees, which benefitted KRT. (Rec. Doc. No. 27 at 2, 5, 7, & 10).

Testimony from both Marks and Plaintiff confirm that as an employee, Marks took Plaintiff to work and brought him home each

day (with one or two exceptions). (Rec. Doc. No. 28 at 5). Marks was a designated driver for Defendant KRT's van. The driving rules for the van stated, "the only passengers allowed in the vehicle are the designated crewmembers for the M/V TAK 1; [p]ersonal use of the vehicle is prohibited." (Rec. Doc. No. 28 at 5). Neither was paid for the time while they traveled to and from the vessel. (Rec. Doc. No. 31 at. 3).

KRT avers the vehicle and transportation is provided for captains "as a matter of convenience only" and does not evidence any benefit to the employer. (Rec. Doc. No. 31 at 4). KRT explains the circumstances which led the company to provide the vehicles and transportation:

> Originally, KRT employees traveled in their own vehicles to meet the vessel on any given day and returned in their own vehicles upon the end of each day's watch. They were not reimbursed for their travel expenses or paid for travel time. See Exhibit "A". At some point the captains had arranged to swap vehicles whenever a crew change occurred each day. However, <u>problems arose in this regard when certain individuals balked at the use of their cars by third parties</u>. As a result, as a matter of convenience only, <u>KRT provided its van for use by the captains for transport to and from the vessel</u>. Generally, one captain would drive the van to wherever location the vessel would be located at crew change. He would then turn the keys over to the other captain who was entitled to bring it to his home and then return the next day at an appointed location for the next crew change. <u>See</u> Exhibit "A"; Exhibit "C", pp. 15-16, 40. The captains <u>were under no obligation to pick up their respective deckhands</u>. <u>Id.</u>

(Rec. Doc. No. 31 at 3-4) (emphasis added).

Although Defendant KRT contends "convenience" was the reason for providing transportation, the evidence suggests otherwise.

9

However, reasonable persons might find differently. This presents a material issue of fact best left for the trier of fact to determine.  The Plaintiff worked for KRT prior to his assignment with the TAK-I; and Marks "had met him before." (Rec. Doc. No. 27 at 3, Deposition of Erick Marks). It was not until Plaintiff became an assigned deckhand in Marks' crew that he first provided rides to Plaintiff, in the KRT van. (Rec. Doc. No. 27 at 3). Ryan Matis' Deposition testimony sheds further light on the purpose of the van transportation which KRT provided:

> Q: Who normally rode in the van?
> A: The van was purchased for the use of transportation for the captain and the deckhand for the crew change. So the captain, whoever was getting on the boat was driving the van to the boat and whoever was getting off was driving it home.

(Rec. Doc. No. 28 at 5, quoting Deposition of Ryan Matis).

In addition, Marks and Plaintiff were occasionally required to perform vessel related work on the way to work. Marks' Deposition testimony states the following:

> Q: And then before this accident you would drive the van to Majouris and pick up the groceries?
>
> A: Yes
>
> Q: And who loaded the van with the groceries?
>
> A. Myself and the storekeeper or the storeworker.
>
> Q: If a deckhand was with you at the time would he also help load?
>
> A: He would help, but it didn't happen that way because the store was between his house and my house, so I picked up the groceries. . . and then dr[o]ve to his house and pick[ed] him up.
>
> Q: And when you got to the vessel he would unload the

> groceries onto the TAK-I.
>
> A: Both crews, the crew coming on, crew coming off get together and do it.
>
> Q: Okay. Now, Mr. Matis . . . said that there were times where on the drive in you would stop at the office and there was some kind of shed, supply shed at the office and you might pick up air filters or oil filters or other equipment for the vessel and put them in the van and then take them to the boat and bring them on board.
>
> A. That is correct, but it's not routine.

(Rec. Doc. No. 27 at 5-6, quoting Deposition of Erick Marks). The Plaintiff further states, "[a]t the time of the automobile collision, Captain [sic] Marks was on the clock for Kathryn Rae because he was paid $205 for the 24 hours." (Rec. Doc. No. 27 at 8). The record before the Court does not provide the actual frequency of such work-related stops nor whether Plaintiff or Marks were offered compensation for such duties. This presents a material issue of fact.

The third factual issue is whether the Plaintiff was required to ride in the van KRT provided. The Plaintiff contends that he was told to ride in the van. In his deposition he states the following:

> Q: And that was your testimony, you felt like you had to ride in the van?
>
> A: Yes. I felt- I'm sorry. Yes, I did feel- they told me, you know that th evan- I had to ride in the van if I was going to work, because if the van brings us to Myrtle Grove, I mean it brings us everywhere. Wherever the boat is, the van has to bring us to it.
>
> BY MR. DEAS:
> Q: Who is the "they" that you're talking about?

11

> A: Keith Savoy. He called me up the first day that I
> was to work for the company. See, when I first started,
> I didn't have to because I jumped from one boat to the
> other one because I used to be required to stay on the
> other boat.
>
> On this boat they didn't let us stay on it. We went
> home. He called me at home and told me that my captain
> was going to pick me up, which is Eric Marks, and drive
> me to the boat.

(Rec. Doc. No. 27 at 6-7, quoting Deposition of Ryan Matis). Defendant KRT contests that fact. This is another material issue of fact best left for the jury.

### E. Progressive's Motion for Summary Judgment

Progressive seeks summary judgment on the ground that because Plaintiff is a Jones Act seaman, he cannot bring a cause of action against Erick Marks, his co-employee, or by extension, his personal liability carrier, Progressive. Defendant KRT responded to Progressive's motion for summary judgement.[3] (Rec. Doc. No. 32). KRT's contention, as discussed above, hinged on the argument that Erick Marks and Plaintiff are not seaman under the Jones Act. Given the Court's holding that Marks and Plaintiff would be considered seaman if they prove course and scope of employment, Progressive's argument lacks merit at this time.

In The OSCEOLA, 189 U.S. 158 (1903), the Supreme Court concluded that general maritime law does not create a cause of action on behalf of a seaman for the negligence of his master or fellow crewmen. The Court held that a "seaman is not allowed to recover an indemnity for the negligence of the master, or any

---

[3]Plaintiff did not oppose this motion.

member of the crew" beyond his maintenance and cure, although under general maritime law he may be entitled to consequential damages for unseaworthiness of the vessel. The Fifth Circuit followed this decision in Ivy v. Security, 606 F.2d 524 (1979). As Progressive argues, under the Jones Act, a seaman cannot sue a fellow employee for negligence. See Pearson v. Rowan Cos., 674 F.Supp. 558, 559 (E.D.La. 1987) (citing The Osceola, 189 U.S. at 158; Roth v. Cox, 210 F.2d 76, 78 (5th Cir. 1954)).[4] In the instant action, Marks and Plaintiff are co-employees. Under the law, Plaintiff may not maintain such action if seaman status is later found by the trier of fact.[5]

**CONCLUSION:**

For the foregoing reasons, **IT IS ORDERED** that all parties' motions are **DENIED** due to material issues of fact regarding whether Plaintiff was in the course and scope of employment at the time of the accident.

New Orleans, Louisiana, this 2nd day of February, 2006.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE

---

[4] However, the Jones Act, 46 U.S.C. § 688, does not preclude a plaintiff from bringing an additional claim against a fellow seaman for an intentional tort. See Pearson, 674 F.Supp. at 560.

[5] It is worth noting that Plaintiff filed no opposition to Progressive's motion.